Carlton R. Asher, Jr. (CA-8530)
LAW OFFICES OF CARLTON R. ASHER, JR.
110 East 59th Street, Suite 2900
New York, New York 10022-1304
Tel.: (212) 308-7171
*Attorneys for Defendants and*
 *Counterclaim Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SYNOVICS PHARMACEUTICALS, INC.,

                      Plaintiff,

      - against -                                 08 Civ. 5861 (JSR) (DFE)

NIRMAL MULYE and NOSTRUM
PHARMACEUTICALS, INC.,                     **ANSWER**

                Defendants.
------------------------------------------------------------x
NOSTRUM PHARMACEUTICALS, INC.
 (n/k/a Nostrum Investments, Inc.),

                  Counterclaim Plaintiff,

     - against -

SYNOIVCS PHARMACEUTICALS, INC.,

                Counterclaim Defendant.
------------------------------------------------------------x

      Defendant Nirmal Mulye ("Mulye") and defendant and counterclaim plaintiff Nostrum Pharmaceuticals, Inc. (n/k/a Nostrum Investments, Inc. ("Nostrum" and together "Defendants"), by their undersigned attorneys, as and for their Answer to the Complaint (the "Complaint") of plaintiff and counterclaim defendant Synovics Pharmaceuticals, Inc. ("Synovics") herein, allege, upon knowledge with respect to their own acts and upon information and belief as to all other matters, as follows:

1. Deny the allegations contained in paragraph 1 of the Complaint, except admit that Synovics purports to bring the action as alleged therein.

2. Deny the allegations contained in paragraph 2 of the Complaint, except refer the Court to the settlement agreement, the escrow agreement and the pleadings in the actions and proceedings referred to therein for a full and complete statement of their content.

3. Deny the allegations contained in paragraph 3 of the Complaint, except admit that all prior actions and proceedings between the parties herein were dismissed pursuant to a settlement agreement executed on or about July 31, 2007 and refer the Court to that agreement for a full and complete statement of its content.

4. Deny the allegations contained in paragraph 4 of the Complaint, except admit that Nostrum's shares of Synovics' common stock were placed in escrow pursuant to the terms of the parties' settlement and escrow agreements and refer the Court to such agreements for a full and complete statement of their content.

5. Deny the allegations contained in paragraph 5 of the Complaint, except admit that Bank of India released and discharged Defendants from their individual and corporate guarantees and refer the Court to the agreements and other documents referred to therein for a full and complete statement of their content.

6. Deny the allegations contained in paragraph 6 of the Complaint.

7. Deny the allegations contained in paragraph 7 of the Complaint.

8. Deny the allegations contained in paragraph 8 of the Complaint, except admit that Synovics purports to bring the action as alleged therein.

9. Admit the allegations contained in paragraph 9 of the Complaint, except admit, upon information and belief, the allegation concerning the current address of Synovics' principal place of business.

10. Admit the allegations contained in paragraph 10 of the Complaint.

11. Admit the allegations contained in paragraph 11 of the Complaint.

12. Admit the allegations contained in paragraph 12 of the Complaint, except deny the allegation concerning the amount in controversy.

13. Deny the allegations contained in paragraph 13 of the Complaint, except admit that Synovics purports to bring this action before this Court as alleged therein and refer the Court to the settlement and escrow agreements referred to for a full and complete statement of their content.

14. Deny the allegations contained in paragraph 14 of the Complaint, except admit that Nostrum is in the business, among other things, of developing pharmaceutical products using its controlled release and other technology therefor and, upon information and belief, that Synovics is in the business, among other things, of seeking to manufacture and sell certain pharmaceutical products.

15. Deny the allegations of paragraph 15 of the Complaint, except admit that in 2005 Synovics and Nostrum entered into agreements providing Synovics with rights in certain pharmaceutical products in exchange for which Nostrum received certain shares of Synovics common stock and refer the Court to the agreements referred to therein for a full and complete statement of their content.

16. Deny the allegations contained in paragraph 16 of the Complaint, except admit that Mulye, the director of Nostrum and beneficial owner of its

outstanding capital stock, served for a period of time as a member of Synovics board of directors and as its chief scientific officer.

17. Admit the allegations contained in paragraph 17 of the Complaint, except refer the Court to the pleadings, motions, orders and other papers filed in the proceedings referred to therein for a full and complete statement of their content.

18. Admit the allegations contained in paragraph 18 of the Complaint, except deny the allegations to the extent that they assert that a single license agreement was involved in the prior actions before this Court and refer the Court to the pleadings filed in such actions for a full and complete statement of their content.

19. Admit the allegations contained in paragraph 19 of the Complaint, except refer the Court to the pleadings filed in the arbitration proceeding referred to therein for a full and complete statement of their content.

20. Deny the allegations contained in paragraph 20 of the Complaint, except admit that Synovics filed an action in the United States District Court for the District of New Jersey and refer the Court to the pleadings, motions and other papers filed in that action for a full and complete statement of their content.

21. Deny the allegations contained in paragraph 21 of the Complaint, except refer the Court to the pleadings, motions, orders and other papers filed in the proceedings referred to therein for a full and complete statement of their content.

22. Admit the allegations contained in paragraph 22 of the Complaint, except refer the Court to the settlement agreement referred to therein for a full and complete statement of its content.

23. Deny the allegations contained in paragraph 23 of the Complaint and refer the Court to the settlement referred to therein for a full and complete statement of the terms thereof.

24. Deny the allegations contained in paragraph 24 of the Complaint, except admit that the shares of Synovics' common stock referred to therein were placed in escrow and that Synovics would be entitled to obtain the shares if certain conditions were met in accordance with the terms of the parties' settlement and escrow agreements and refer the Court to such agreements for a full and complete statement of their content.

25. Admit the allegations contained in paragraph 25 of the Complaint, except refer the Court to the escrow agreement referred to therein for a full and complete statement of its content.

26. Deny the allegations contained in paragraph 26 of the Complaint, except refer the Court to the settlement agreement referred to therein for a full and complete statement of its content.

27. With respect to paragraph 27 of the Complaint, admit the allegations contained in the first sentence, deny the allegations contained in the second sentence and refer the Court to the provisions of the settlement and escrow agreements referred to therein for a full and complete statement of their content.

28. Admit the allegations contained in paragraph 28 of the Complaint and refer the Court to the guarantees and undertaking referred to therein for a full and complete statement of their content.

29. With respect to paragraph 29 of the Complaint, admit the allegations contained in the first two sentences, deny the allegations contained in the third sentence and refer the Court to the settlement agreement referred to therein for a full and complete statement of its content.

30. With respect to paragraph 30 of the Complaint, admit the allegations contained in the first sentence, deny the allegations contained in the second sentence and refer the Court to the settlement agreement referred to therein for a full and complete statement of its content.

31. Admit the allegations contained in paragraph 31 of the Complaint and refer the Court to the notices and other documents referred to therein for a full and complete statement of their content.

32. With respect to paragraph 32 of the Complaint, admit the allegations contained in the first sentence, deny the allegations contained in the second sentence and refer the Court to the letter, certificate and other documents referred to therein for a full and complete statement of their content.

33. Deny the allegations contained in paragraph 33 of the Complaint.

34. Deny the allegations contained in paragraph 34 of the Complaint.

35. Admit the allegations contained in paragraph 35 of the Complaint and refer the Court to the letters and other documents referred to therein for a full and complete statement of their content.

36. Deny the allegations contained in paragraph 36 of the Complaint, except admit the allegation that Nostrum asserted that there was a default on the credit agreement referred to therein and refer the Court to the purported letter dated March 26, 2008 referred to therein for a full and complete statement of its content.

37. Admit, upon information and belief, the allegations contained in paragraph 37 of the Complaint.

38. Deny the allegations contained in paragraph 38 of the Complaint.

39. Deny the allegations contained in paragraph 39 of the Complaint.

40. Deny the allegations contained in paragraph 40 of the Complaint.

41. Deny the allegations contained in paragraph 41 of the Complaint.

42. With respect to paragraph 42 of the Complaint, repeat and reallege each and every allegation set forth in paragraphs 1 through 41 of their Answer herein with the same force and effect as if fully set forth herein.

43. Admit the allegations contained in paragraph 43 of the Complaint.

44. Deny the allegations contained in paragraph 44 of the Complaint, except admit that Synovics seeks the relief alleged therein.

45. With respect to paragraph 45 of the Complaint, repeat and reallege each and every allegation set forth in paragraphs 1 through 44 of their Answer herein with the same force and effect as if fully set forth herein.

46. Deny the allegations contained in paragraph 46 of the Complaint.

47. Deny the allegations contained in paragraph 47 of the Complaint.

48. Deny the allegations contained in paragraph 48 of the Complaint.

49. With respect to paragraph 49 of the Complaint, repeat and reallege each and every allegation set forth in paragraphs 1 through 48 of their Answer herein with the same force and effect as if fully set forth herein.

50. Deny the allegations contained in paragraph 50 of the Complaint.

51. Deny the allegations contained in paragraph 51 of the Complaint.

52. Deny the allegations contained in paragraph 52 of the Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

53. The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

54. The claims asserted by Synovics are barred by the doctrines of waiver and estoppel.

### Third Affirmative Defense

55. The claims asserted by Synovics are barred, in whole or in part, by reason of its own contributory or comparative negligence or other culpable conduct.

### Fourth Affirmative Defense

56. The claims asserted by Synovics are barred, in whole or in part, by reason of its failure to mitigate damages.

### Fifth Affirmative Defense

57. This Court lacks personal jurisdiction over the second and third "counts" alleged in the Complaint.

### Sixth Affirmative Defense

58. At all relevant times, Defendants acted in good faith and exercised at least that degree of care, diligence and skill which a reasonably prudent person would exercise under similar circumstances and in like positions.

### Seventh Affirmative Defense

59. The claims asserted by Synovics are barred, in whole or in part, by reason of its failure of performance pursuant to the settlement agreement and the escrow agreement referred to in the Complaint.

### COUNTERCLAIM

Defendant and counterclaim plaintiff Nostrum Pharmaceuticals, Inc. (n/k/a Nostrum Investments, Inc.) ("Nostrum") asserts the within counterclaim against plaintiff and counterclaim defendant Synovics Pharmaceuticals, Inc. ("Synovics"), and in support thereof alleges, upon knowledge with respect to its own acts and upon information and belief as to all other matters, as follows:

### The Parties

60. Nostrum is a Delaware corporation with its principal place of business at 505 Thornall Street, Suite 304, Edison, New Jersey 08837. At all relevant times, Nostrum has been engaged, among other things, in the business of developing time release and other technology for pharmaceutical products.

61. Synovics is a Nevada corporation with its principal place of business located, upon information and belief, at 5360 NW 35th Avenue, Ft. Lauderdale, Florida 33309. At all relevant times, Synovics, a public corporation, has been

engaged in the business, among other things, of seeking to develop, manufacture and sell pharmaceutical products.

62. Nostrum incorporates the allegations set forth in paragraphs 1 through 59 of its Answer herein with the same force and effect as if fully set forth herein.

### Jurisdiction

63. This Court has supplemental jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367 and the common law principles of ancillary jurisdiction. The counterclaim arises out of the transactions and occurrences alleged in Synovics' claims contained in its Complaint herein and are so related to those claims that they form a part of the same case or controversy. This Court also has jurisdiction over the counterclaim pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship. The amount in controversy exceed the sum of $75,000, exclusive of interest and costs.

### The Parties' Prior Agreements, the Bank of India Credit Agreement and Synovics' Default Thereunder

64. Commencing in June 2004, Nostrum and Synovics have entered into two pharmaceutical product development and licensing agreements involving up to a total of 20 orally administered control-released drug products.

65. Pursuant to the first license agreement dated as of June 16, 2004 and a related stock purchase agreement, Synovics (then known as Bionutrics, Inc.) issued six million shares of its common stock to Nostrum in payment for a license for the right to develop, manufacture and sell four proprietary to be named pharmaceutical candidates that qualify for filing with the U.S. Food and Drug Administration ("FDA") under a "505(b)(2)" application using Nostrum's technology.

66. Thereafter, Nostrum and Synovics entered into a second license agreement dated as of March 16, 2005, which superseded the original agreement and provided Synovics with the right to develop, manufacture and sell up to ten generic drug products and up to ten "505(b)(2)" products using Nostrum technology. As part of the consideration for this license, Synovics issued to Nostrum a further six million shares of its common stock and undertook to pay Nostrum a 50% royalty based on the gross profits from the future sale of any such generic products.

67. On or about May 17, 2006, Nostrum and Synovics Laboratories, Inc. ("Synovics Labs"), a subsidiary of Synovics, entered into an agreement pursuant to which Nostrum granted Synovics Labs an exclusive license to develop, make, market and sell Metformin 500mg and Metformin 750mg extended release tablets using Nostrum's technology and transferred to Synovics Labs Nostrum's Abbreviated New Drug Application ("ANDA") for the Metformin 500mg product. In consideration for this agreement, Synovics Labs agreed to pay Nostrum, among other things, a $150,000 milestone payment upon FDA approval of the ANDA, and a royalty on sales of the ANDA product equal to 20% of the net sales up to a maximum of $1,500,000.

68. On or about May 23, 2006, Synovics acquired privately-held Kirk Pharmaceuticals, LLC and ANDAPharm, LLC (and affiliated companies) (the "Kirk Acquisition"), based in Ft. Lauderdale, Florida. In connection with the transaction, Synovics entered into a Credit Agreement with Bank of India dated as of May 22, 2006 (the "Credit Agreement") in the amount of $10.5 million ("Bank of India Financing"), the proceeds of which were used, along with an equity investment of

$6,000,000 from Maneesh Pharmaceuticals Pvt. Ltd., for (a) the Kirk Acquisition and (b) for working capital purposes. Nostrum and its principal stockholder, Nirmal Mulye ("Mulye") provided unconditional financial guarantees (the "Guarantees") and a separate written undertaking (the "Undertaking") to Bank of India in connection with the Bank of India Financing. In return, the interest costs of the Bank of India Financing (on which there were no points) was and, upon information and belief, continues to be prime plus one percent.

69.  Commencing in August 2006, shortly following the closing of the Bank of India Financing and the Kirk Acquisition, and continuing for more than one year, Synovics and Synovics Labs, in substantial breach of their material obligations under the aforesaid product license agreements, failed and refused (a) to conduct work preparatory to, and necessary for, the performance of any clinical studies with regard to many of the licensed products; (b) to use diligent efforts to manufacture, market, distribute and sell the Metformin 500mg product and (c) to pay or reimburse Nostrum for its reasonable costs and expenses in connection with the performance of its obligations under these agreement. The sums due Nostrum thereunder included research and development costs in an amount in excess of $1,000,000, and despite having received FDA approval of the Metformin ANDA in July 2006, neither Synovics nor Synovics Labs paid Nostrum the milestone payment due Nostrum.

70.  In addition to its repudiation of its obligations under the aforesaid license agreements, Synovics' Board of Directors adopted a "Poison Pill" Rights Agreement and related By-law amendments effective as of September 20, 2006

pursuant to which Synovics sought to prevent Nostrum from exercising its rights as the largest stockholder of Synovics. Furthermore, Synovics has never called a meeting of its shareholders from the inception of Nostrum's investment in 2004 until, upon information and belief, the present date.

71. In addition, Synovics commenced an arbitration and two related proceedings before this Court in 2006 and 2007 in which it asserted claims purporting to justify its clear breach of its obligations under the aforesaid license agreements. Synovics also filed in the United States District Court for the District of New Jersey an entirely meritless case seeking, among other things, to impose a constructive trust over Nostrum's unrelated business assets.

72. Pursuant to a Settlement Agreement entered into by Synovics, Synovics Labs, Nostrum and Mulye as of July 31, 2007 (the Settlement Agreement") and a related Escrow Agreement between Synovics and Nostrum dated as of July 31, 2007 (the "Escrow Agreement"), copies of which are annexed as Exhibit 1 and 2 to the Complaint, Synovics, Synovics and Nostrum agreed to settle all of the claims and disputes between them.

73. Nostrum agreed to, and did deposit with the Escrow Agent pursuant to the Settlement Agreement and the Escrow Agreement all of the 10,661,000 shares of Synovics' common stock (the "Escrowed Shares") which it then owned.

74. Pursuant to paragraph 6 of the Settlement Agreement, Synovics was required, among other things, to use its "reasonable best efforts" to obtain from Bank of India a full release and discharge of the Guarantees and the Undertaking that Nostrum and Mulye had delivered to Bank of India in connection with

Synovics' prior Bank of India Financing. In the event that Synovics was not able to obtain Bank of India's release and discharge of the Guarantees and the Undertaking on or before April 30, 2008, the Escrowed Shares, pursuant to paragraph 7 of the Settlement Agreement, were to be returned to Nostrum or its designee, free and clear of all claims by Synovics, Bank of India or the Escrow Agent.

75. Since Nostrum and Mulye remained at substantial risk under the Guarantees to Bank of India with regard to Synovics' $10.5 million credit facility, Nostrum and Mulye bargained for, and Synovics agreed pursuant to paragraph 7 of the Settlement Agreement, that Nostrum could also obtain return of the Escrowed Shares "[i]n the event that a default with [Bank of India] is not cured within sixty (60) days, upon instruction by Nostrum". In such event, the Escrowed Shares were to be transferred to Nostrum or its designee, free and clear of all claims by Synovics or the Escrow Agent.

76. Indeed, the likely occurrence of such a credit risk is why Nostrum and Mulye bargained for and obtained the aforesaid special terms in the Settlement Agreement regarding the return of the Escrowed Shares in precisely this situation. A subsequent cure by the borrower of such default following the expiration of the 60-day period is no consolation to a party in the position of Nostrum and Mulye, and no provision excusing transfer of the Escrowed Shares to Nostrum based on the borrower's cure outside of the 60-day period is contained in the Settlement Agreement.

77. In connection with Nostrum's communications with Bank of India relating to its existing banking and credit relationships, Nostrum was directly informed by Bank of India on March 18, 2008 that Synovics had not then paid Bank of India an installment payment in the amount of $250,000 that was first due and payable to Bank of India on January 15, 2008 under the aforesaid Credit Agreement and that Synovics had not cured the default within 60 days of its occurrence.

78. By letter dated March 21, 2008, along with an Affidavit of Anil Anand, a consultant to Nostrum, sworn to March 20, 2008, Nostrum instructed the Escrow Agent pursuant to the Settlement Agreement and the Escrow Agreement to transfer the Escrowed Shares to Nostrum. As therein stated, Bank of India had not, as of March 21, 2008, delivered to Nostrum or Mulye a release of their obligations under the Guarantees.

79. By reason of Synovics' default in making the payment due Bank of India under the Credit Agreement on January 15, 2008, and such default not having been cured within 60 days of its occurrence, the Escrow Agent is required, pursuant to such instruction, to transfer all of the Escrowed Shares to Nostrum pursuant to the terms of the Settlement Agreement and the Escrow Agreement.

80. In Synovics' response dated March 26, 2008 to Nostrum's instruction letter dated March 21, 2008, Synovics did not rebut Nostrum's affidavit or adequately address the contractually relevant issue pursuant to paragraph 7 of the Settlement Agreement. Synovics' response explicitly conceded that Synovics was in default under the credit facility. (Indeed, "Events of Default" is defined in Section

8.01 of the Credit Agreement between Synovics and Bank of India to include, among other things, Synovics' "fail[ure] to pay the principal, interest, fees or commissions relating to any Advance when due and payable".) Moreover, Synovics did not deny Nostrum's sworn evidence that Synovics was in default on a significant monetary obligation for more than 60 days, nor did Synovics offer any written documentation signed by Bank of India purporting to cure the default (written consent being required under the terms of the Credit Agreement), nor did Synovics assert that any such documentation exists. Although Synovics claimed in its March 26, 2008 response that Bank of India "informally and *now* formally" (emphasis added) agreed to modify the terms of the Credit Agreement, it did not disclose when, if ever, such modification actually occurred.

81. Accordingly, when six weeks later Synovics purportedly gave the Escrow Agent written instruction dated April 29, 2008 demanding release of the Escrowed Shares to Synovics, such instruction was contractually invalid and of no force and effect. By letter dated April 29, 2008, Nostrum promptly so informed the Escrow Agent and repeated its instructions, originally made on March 21, 2008, for transfer of the Escrowed Shares to Nostrum.

## Declaratory Relief Requested

82. Nostrum repeats and realleges the allegations set forth above with the same force and effect as if fully set forth herein.

83. Synovics' objection to the Escrow Agent's release of the Escrow Shares to Nostrum and the Escrow Agent's decision not to do so without the consent of Synovics and Nostrum or until a court has indicated it is proper, constitutes a

justiciable controversy regarding the rights and obligations of the parties under the Settlement Agreement and the Escrow Agreement requiring the Court's intervention.

84. Accordingly, Nostrum requests that the Court declare the following:

(a) Nostrum has fully performed all of its obligations under the Settlement Agreement and the Escrow Agreement;

(b) as of March 18, 2008, Synovics was in default of its obligation to pay Bank of India an installment payment pursuant to the Credit Agreement in the amount of $250,000 that was first due and payable to Bank of India on January 15, 2008 and that Synovics had not cured such default within 60 days of its occurrence;

(c) pursuant to the Settlement Agreement, and Nostrum's due notice given to the Escrow Agent on March 21, 2008, the Escrow Shares were required to be transferred to Nostrum at that time, free and clear of any claim by Synovics or the Escrow Agent;

(d) Synovics is required to instruct the Escrow Agent to immediately transfer the Escrowed Shares to Nostrum.

WHEREFORE, defendant Nirmal Mulye and defendant and counterclaim plaintiff Nostrum Pharmaceuticals, Inc. (n/k/a Nostrum Investments, Inc.) demand judgment dismissing the Complaint herein, with prejudice; Nostrum further demands judgment on its Counterclaim against Synovics, declaring and directing that Synovics deliver, or instruct the Escrow Agent to deliver, forthwith to Nostrum all of the Escrowed Shares together with all dividends, distributions, products and

proceeds thereof; and Mulye and Nostrum demand judgment for their costs and disbursements, including reasonable fees for attorneys, accountants and experts, incurred in connection with this action and such other and further relief as to the Court may seem just and proper.

Dated: New York, New York
       August 13, 2008

                              LAW OFFICES OF CARLTON R. ASHER, JR.

                              By _/s/ Carlton R. Asher_____
                                 Carlton R. Asher, Jr. (CA-8530)
                              Attorneys for Defendant Nirmal Mulye and
                                Defendant and Counterclaim Plaintiff
                                Nostrum Pharmaceuticals, Inc.
                              110 East 59th Street, Suite 2900
                              New York, New York 10022-1304
                              (212) 308-7171