Carlton R. Asher, Jr. (CA-8530)
LAW OFFICES OF CARLTON R. ASHER, JR.
110 East 59th Street, Suite 2900
New York, New York 10022-1304
Tel.: (212) 308-7171
*Attorneys for Defendants and*
*Counterclaim Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SYNOVICS PHARMACEUTICALS, INC.,                :

                Plaintiff,
                                      :

      - against -                           08 Civ. 5861 (JSR)
                                      :
NIRMAL MULYE and NOSTRUM
PHARMACEUTICALS, INC.,                                        :

                Defendants.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NOSTRUM PHARMACEUTICALS, INC.                       :
  (n/k/a Nostrum Investments, Inc.),

                                      :
                Counterclaim Plaintiff,
                                      :

      - against -
                                      :
SYNOVICS PHARMACEUTICALS, INC.,
                                      :
                Counterclaim Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                  **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
                  **SECOND AND THIRD COUNTS IN PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 1

ARGUMENT .......................................................................................................................... 5

    THE CLAIMS FOR BREACH OF CONTRACT AND OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ARE NOT LEGALLY FEASIBLE, AND, ACCORDINGLY, THE SECOND AND THIRD COUNTS OF THE COMPLAINT MUST BE DISMISSED .................... 5

CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**        Page

*Achtman v. Kirby, McInerney & Squire, LLP*,
    464 F.3d 328, 337 (2d Cir. 2006) ..................................................................................5

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87, 98 (2d Cir. 2007)......................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955, 1974 (2007)........................................................................................5

*Benzman v. Whitman*,
    523 F.3d 119, 129 (2d Cir. 2008)..................................................................................5

*Boykin v. KeyCorp*,
    521 F.3d 202, 213 (2d Cir. 2008)..................................................................................8

*Cosmas v. Hassett*,
    886 F.2d 8, 11 (2d Cir. 1989)........................................................................................5

*Gonzalez v. Caballero*,
    __ F. Supp. 2d __, 2008 WL 3919404, *1 (S.D.N.Y. Aug. 27, 2008) ....................5

*Harris v. Provident Life and Acc. Ins. Co.*,
    310 F.3d 73, 83 (2d Cir. 2002)......................................................................................6

*Musket Corp. v. PDVSA Petroleo, S.A.*,
    512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007)..................................................................6

Orville v. Newski, Inc.,
    547 N.Y.S.2d 913, 914 (3d Dept. 1989) ......................................................................8

*Roberts v. Karimi*,
    251 F.3d 404, 407 (2d Cir. 2001)..................................................................................6

*Terwilliger v. Terwilliger*,
    206 F.3d 240, 246 (2d Cir. 2000)...............................................................................6, 8

**Rules**

*Fed. R. Civ. P.* 12(c). ............................................................................................................5, 8
Rule 12(b)(6) ............................................................................................................................5

PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of defendant Nirmal Mulye ("Mulye") and defendant and counterclaim plaintiff Nostrum Pharmaceuticals, Inc. (n/k/a Nostrum Investments, Inc.) ("Nostrum" and together "Defendants") in support of their motion for an order, pursuant to *Fed. R. Civ. P. Rule 12(c)*, dismissing the Second and Third Counts of the Complaint of plaintiff Synovics Pharmaceuticals, Inc. ("Synovics") for failure to state a claim upon which relief can be granted. Because those counts cannot meet the plausibility standard, the motion should be granted.

STATEMENT OF FACTS

By their respective pleadings, Synovics and Nostrum seek the declaration of their rights under a Settlement Agreement and Escrow Agreement into which they entered as of July 31, 2007 to resolve a number of contested matters between them concerning the disposition of 10,661,000 shares of Synovics' common stock. (Complaint, ¶ 1; Amended Answer and Counterclaim, ¶ 91). Synovics also seeks damages for breach of contract and of the covenant of good faith and fair dealing, but it does so without properly alleging a breach, causation or damages. (Complaint, Counts 2 and 3).

Synovics asserts that, beginning in 2005, Synovics and Nostrum developed a working relationship pursuant to which Nostrum provided Synovics with the right to develop up to twenty pharmaceutical products for which Synovics gave Nostrum cash and shares of Synovics' common stock representing a substantial position in the company. (Complaint, ¶ 15). On May 22, 2006, the Bank of India ("BOI") extended a $10,500,000 credit facility to Synovics, in connection with which Mulye provided BOI with a personal guarantee, Nostrum provided a

corporate guarantee and both provided an additional undertaking (collectively the "Guarantees"). (Complaint, ¶ 28).

Thereafter, a number of disputes arose between the parties, which resulted in several contested proceedings. (Complaint, ¶ 17). Effective July 31, 2007, the parties reached a global settlement of their disputes. (Complaint, ¶ 22 and Exhibits 1 and 2). The essence of the settlement was that Nostrum was to retain its intellectual property, and Synovics was to receive the return of its stock if it met certain specified conditions. (Complaint, ¶¶ 23-24). In order to earn the return of its stock, Synovics was required to obtain a release and discharge of the Guarantees. (Complaint, ¶ 24). Synovics was given nine months within which to obtain such release and discharge during which time the stock was to be held in escrow pursuant to the Escrow Agreement. (Complaint, ¶¶ 24-26 and Exhibits 1 and 2). In the event Synovics was unsuccessful in discharging Nostrum from its Guarantees within the specified time, Nostrum was entitled to the stock free and clear of all claims by Synovics.[1] (Complaint, ¶ 29).

Because Nostrum and Mulye were at substantial risk as a result of their Guarantees, the Settlement Agreement required Synovics to keep current on the underlying loan. (Complaint, ¶ 24 and Exhibit 1 at ¶ 7). Specifically, the Settlement Agreement provided that "[i]n the event that a default with BOI is not cured within sixty (60) days, upon instruction by Nostrum any remaining Escrowed Shares shall forthwith be transferred to Nostrum or its designee, free and clear of all claims by Synovics or the Escrow Agent...." (Complaint, ¶ 29 and Exhibit 1 at ¶ 7). To secure its $10,500,000 credit facility, Synovics had entered into a Credit Agreement with

---

[1] Indeed, in the event Synovics issued additional shares during the nine-month escrow period, Nostrum was entitled to receive more shares than were escrowed in order to maintain a 32% position in the event the shares were released to Nostrum. (Complaint, Exhibit 1 at ¶ 8).

2

BOI.[2] (Complaint, ¶ 28). The Credit Agreement defined an Event of Default, *inter alia*, as a "fail[ure] to pay the principal, interest, fees or commissions relating to any Advance when due and payable." (Asher Decl., Exhibit D at Section 8.01(a)).

The Settlement Agreement also had a cooperation provision, which specified,

> during the Escrow Period Nostrum and Dr. Mulye shall make their reasonable best efforts, *upon written request of Synovics* (and at Synovics' reasonable expense), to cooperate with Synovics (but without incurring any financial, legal or credit obligation on the part of Nostrum or Dr. Mulye) in extinguishing their unconditional guarantees to BOI under the Synovics' credit facility with BOI and in curing any defaults under Synovics' credit facility with BOI.

(Complaint, ¶ 29 and Exhibit 1 at ¶ 7)(emphasis added). There is no allegation in the Complaint that there was ever such a written request.

On March 18, 2008, Nostrum was informed by BOI that Synovics had not made a payment of $250,000 that was due on January 15, 2008. (Amended Counterclaim, ¶ 83). By letter dated March 21, 2008, Nostrum notified the Escrow Agent, in accordance with the terms of the Escrow Agreement, that a default had occurred in BOI's credit facility to Synovics and was not cured for sixty days, thus entitling Nostrum to the release of the Escrowed Shares. (Complaint, ¶ 36; Asher Decl., Exhibit A). On March 26, 2008, Synovics objected to the release of the shares to Nostrum, although Synovics admitted it had not made the January 15, 2008 payment within the sixty-day period set forth in the Settlement Agreement. (Asher Decl., Exhibit B). Synovics specifically requested the Escrow Agent "to retain the escrowed shares until Synovics [*sic*] objection has been resolved." (Asher Decl., Exhibit B). According to its

---

[2] A copy of the Credit Agreement between Synovics and BOI dated as of May 22, 2006, filed as Exhibit 10.3 to Synovics' SEC Form 8-K on May 25, 2006, is annexed to the accompanying Declaration of Carlton R. Asher, Jr. ("Asher Decl.") dated September 5, 2008 as Exhibit D.

3

own letter attached to the Complaint, Synovics was able to convince BOI to modify the Credit Agreement after the fact to accept late payment. (Complaint, Exhibit 5).

After Nostrum became entitled to the release of the Escrowed Shares, as noted above, Synovics informed Nostrum and the Escrow Agent, by letter dated April 29, 2008, that BOI had discharged Nostrum and Mulye from the Guarantees and demanded that the shares be released to Synovics. (Complaint, ¶ 32 and Exhibits 3 and 4). Nostrum immediately wrote to the Escrow Agent advising that Synovics' default, which was uncured for sixty days, entitled Nostrum to the shares and rendered Synovics' belated demand "contractually invalid and of no force and effect and should be disregarded...." (Complaint, ¶ 35; Asher Decl., Exhibit C). In light of the cross-objections, the Escrow Agent will take no action without the consent of the parties or upon Court Order. (Complaint, ¶ 37).

ARGUMENT

THE CLAIMS FOR BREACH OF CONTRACT AND OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ARE NOT LEGALLY FEASIBLE, AND, ACCORDINGLY, THE SECOND AND THIRD COUNTS OF THE COMPLAINT MUST BE DISMISSED.

In this declaratory judgment action, this Court ultimately will be called upon to determine who is entitled to the Synovics' shares: Nostrum, pursuant to Paragraph 7 of the Settlement Agreement, because Synovics was in default of its Credit Agreement with BOI, or Synovics, pursuant to Paragraph 5(b) or (6), because Synovics timely obtained a discharge of the Guarantees at a time that was contractually relevant. But Synovics attempts to capitalize on the dispute between the parties as to the meaning of their contracts to urge that such dispute constitutes a breach of contract on the part of Nostrum and Mulye. The claim, however, does not withstand analysis and should be dismissed pursuant to *Fed. R. Civ. P.* 12(c).

A Rule 12(c) motion is governed by the same standards as a motion to dismiss under Rule 12(b)(6). *Gonzalez v. Caballero*, __ F. Supp. 2d __, 2008 WL 3919404, *1 (S.D.N.Y. Aug. 27, 2008). Thus, the movant is entitled to dismissal if there are not "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *Benzman v. Whitman*, 523 F.3d 119, 129 (2d Cir. 2008). While a court must accept the facts alleged in the complaint as true and draw all inferences in plaintiff's favor, *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989), "'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'" *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006). The Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC and

5

documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."[3] *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). By these applicable standards, Counts Two and Three of the Complaint cannot survive this motion.

The dismissal of Count Three requires little analysis. By that Count, plaintiff purports to raise a claim for breach of the implied covenant of good faith and fair dealing. Count Three relies on precisely the same facts as the breach of contract claim. (Complaint, ¶¶ 49-52). It is well-settled, however, that "New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 83 (2d Cir. 2002). Count Three, accordingly, must be dismissed.

While Count Two requires more analysis, it fares no better. To establish its claim for breach of contract, Synovics must allege (1) a contract; (2) performance by the party seeking recovery; (3) breach by the other party; and (4) damages attributable to the breach. *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000); *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007). In connection with the second element, plaintiff must establish "that he 'performed what he was obligated to do under the terms of the contract [and] was ready, willing and able to do all that the contract required.'" *Roberts v. Karimi*, 251 F.3d 404, 407 (2d Cir. 2001) (internal citation omitted). The Second Count of the Complaint can meet only the first element of the claim.

Because of the substantial risk Mulye and Nostrum faced in guaranteeing Synovics' $10,500,000 credit facility with BOI, the Settlement Agreement provided that Nostrum was

---

[3] It is for this reason that this Court is entitled to consider the Default Provision of the Credit Agreement between Synovics and BOI and the letters attached to the Declaration of Carlton R. Asher, Jr. In each case, the document is referenced in and/or relied upon by plaintiff in drafting the Complaint.

6

entitled to the Escrowed Shares in the event that Synovics did not cure a default with BOI within sixty days. (Complaint, Exhibit A at ¶ 7). Under the Credit Agreement with BOI, Synovics was in default if it failed to make a payment when due. (Asher Decl., Exhibit D at Section 8.01(a)). It is undisputed that Synovics failed to make its $250,000 payment within the sixty-day period commencing January 15, 2008 and that Nostrum instructed the Escrow Agent to return the shares. (Asher Decl., Exhibit B). Thus, Synovics failed to meet a contractual condition to reacquire the Escrowed Shares, and it cannot satisfy the second element of its claim.

The third element, likewise, remains unsatisfied. Synovics alleges two breaches, but neither withstands scrutiny. Synovics identifies Nostrum's having "blocked the release of the Escrowed Shares" as an alleged breach of contract. (Complaint, ¶ 36). However, Nostrum was expressly authorized by the Settlement Agreement to demand that the Escrow Agent release those shares to Nostrum after Nostrum learned that Synovics was in default under the Credit Agreement.[4] (Complaint, Exhibit 1 at ¶ 7). Obviously, action taken in accordance with the provisions of a contract cannot constitute a breach of it.

Synovics also urges a supposed breach of the duty to cooperate. (Complaint, ¶ 39). However, the only duty to cooperate in the Settlement Agreement specified:

> during the Escrow Period Nostrum and Dr. Mulye shall make their reasonable best efforts, *upon written request of Synovics* (and at Synovics' reasonable expense), to cooperate with Synovics (but without incurring any financial, legal or credit obligation on the part of Nostrum or Dr. Mulye) in extinguishing their unconditional guarantees to BOI under the Synovics' credit facility with BOI and in curing any defaults under Synovics' credit facility with BOI.

---

[4] For the same reason, Synovics would be unable to sustain its claim to the extent that it might be alleging a "second breach" by virtue of Nostrum's April 29, 2008 letter advising the Escrow Agent that Synovics' demand for the shares was "contractually invalid and of no force and effect." (Complaint, ¶ 35; Asher Decl., Exhibit C).

7

(Complaint, ¶ 29 and Exhibit 1 at ¶ 7) (emphasis added). The duty to cooperate, thus, could be triggered only by a written request by Synovics. No such written request is alleged or produced. Obviously, Nostrum cannot breach a duty that has not been triggered.

Synovics does make an additional allegation, upon information and belief, that Nostrum "interfere[ed] with Synovics' efforts to obtain financing and/or refinancing and otherwise interfere[ed] with Synovics' business activities." (Complaint, ¶ 41). But these vague contentions do not constitute "factual allegations sufficient to 'raise a right to relief above the speculative level.'" *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (internal citation omitted).

Finally, Synovics' breach of contract claim founders because Synovics fails to identify any damages. *Orville v. Newski, Inc.*, 547 N.Y.S.2d 913, 914 (3d Dep't 1989) (damages are an essential element of a breach of contract cause of action). Its sole allegation is that it suffered "economic harm, including but not limited to, damage to Synovics' efforts to secure financing or additional financing." (Complaint, ¶ 48). This suffers from the same defect as its final allegation of breach. *Boykin, supra*, 521 F.3d at 213.

As importantly, there is <u>no</u> allegation of damages "*attributable* to [any] breach." *Terwilliger, supra*, 206 F.3d at 246 (emphasis added). No nexus whatsoever is drawn between any alleged breach and any identified damages.

In short, Counts Two and Three of the Complaint fail to state a claim as a matter of law. Nostrum is entitled to judgment on the pleadings as to those counts pursuant to Rule 12(c). This action can then proceed on the genuine claim between the parties: a declaratory judgment determining the proper interpretation of the parties' agreement.

8

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the Second and Third Counts of the Complaint should be granted.

Dated: New York, New York
       September 5, 2008

>Respectfully submitted,
>
>LAW OFFICES OF CARLTON R. ASHER, JR.
>
>By _/s/ Carlton R. Asher_
>    Carlton R. Asher, Jr. (CA-8530)
>    110 East 59th Street, Suite 2900
>    New York, New York 10022-1304
>    Telephone: (212) 308-7171
>    Facsimile: (212) 223-4912
>    E-mail: asherlaw@att.net
>
>*Attorneys for Defendant Nirmal Mulye and Defendant and Counterclaim Plaintiff Nostrum Pharmaceuticals, Inc.*

*Of Counsel*
Evelyn R. Storch (ES-7294)
PODVEY, MEANOR, CATENACCI, HILDNER,
COCOZIELLO & CHATTMAN
A Professional Corporation
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5497
Telephone: (973) 623-1000
Facsimile: (973) 623-9131